UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE MARRERO

06 CV 5577

-------------------------------------------------------------------

VANLINES.COM LLC, NATIONAL
MORTGAGE INC., and SHARON ASHER

                     Plaintiffs,

             - against -

NET-MARKETING GROUP INC., and ALICE
LULKA

                    Defendants.

-------------------------------------------------------------------x

Index No. _____

**COMPLAINT**

RECEIVED
JUL 24 2006
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs Vanlines.com LLC ("Vanlines"), National Mortgage Inc. ("National Mortgage"), and Sharon Asher ("Asher"; collectively, Vanlines, National Mortgage and Asher shall be referred to as the Plaintiffs hereinafter), by its attorneys Shiboleth, Yisraeli, Roberts & Zisman, L.L.P., hereby allege as follows:

### PARTIES

1.      At all relevant times hereinafter mentioned, plaintiff Vanlines was and is a Delaware limited liability company, which is authorized to do business in New York. Vanlines has a principal place of business at 80 Broad Street, Suite 1303, New York, New York 10004.

2.      At all relevant times hereinafter mentioned, plaintiff National Mortgage was and is a Delaware corporation, which is authorized to do business in New York under the fictitious name of "NM Mortgage Leads". NM Mortgage Leads has a principal place of business at 80 Broad Street, Suite 1303, New York, New York 10004.

3.      At all relevant times hereinafter mentioned, plaintiff Asher was and is a natural person.

4.      Upon information and belief, at all relevant times hereinafter mentioned, defendant Net-Marketing Group Inc. was and is a New York corporation with a place of business at 6 Gem Ct., Hicksville, New York 11801 ("Net-Marketing").

5.      Upon information and belief, at all relevant times hereinafter mentioned, defendant Alice Lulka was and is a natural person with a place of residence at 6 Gem Ct., Hicksville, New York 11801 ("Lulka"). Upon information and belief, Lulka is the president of Net-Marketing (collectively, Lulka and Net-Marketing shall be referred to hereinafter as the "Defendants").

## JURISDICTION AND VENUE

6.      This Court has jurisdiction of the subject matter and the parties under the jurisdictional provisions of 28 U.S.C. §§ 1331, 1338, and 1367, as well as the copyright laws of the United States, 17 U.S.C. § 101 et seq.

7.      Venue is properly placed in this District for claims made against Defendants under 28 U.S.C. § 1391.

## BACKGROUND FACTS

8.      This is an action that arises out of wrongful actions initiated by Lulka during the course of her employment with Vanlines, and continuing afterwards to the present day.

9.      Vanlines was founded by Asher in 1999 and has been active in the field of moving and relocation services to the present day.

10.     Vanlines owns and operates a web site, with an internet address at www.vanlines.com (the "Vanlines Website"). The Vanlines Website offers users free information and free quotes on moving and moving-related services. The Vanlines Website is both fact-intensive and text-intensive in that it allows users, among other things, to educate themselves regarding what a move entails, how to plan for it, how to choose a mover, their rights and responsibilities as clients, and also to enter the unique parameters of their own specific move; obtain a free quote; and be matched with a moving company that would, based on the Vanlines Website's database and technical back-end capabilities, best serve their needs.

11.     Creating the contents of the Vanlines Website took intensive research, a great deal of labor, and a large capital investment on the part of Vanlines. All of the intellectual property rights associated with the Vanlines Website, as well as the website's contents, texts, display, and other materials, are proprietary and are owned outright by Vanlines, as evidenced by, among other things, a certificate of copyright registration for the Vanlines Website, a copy of which is attached hereto as **Exhibit "A"**.

12.     National Mortgage was founded in 2005 by Asher. National Mortgage continues to operate to the present day with a business model similar to the one utilized by Vanlines; that is, National Mortgage owns and operates a web site, with a web address of www.nationalmortgage.com (the "National Mortgage Website"), which offers users free information and free quotes on mortgage and mortgage-related services.

13. As with the Vanlines Website, the National Mortgage Website is both fact-intensive and text-intensive, in that it allows users, among other things, to educate themselves about obtaining a mortgage.

14. As set forth within this complaint, Lulka was hired by Vanlines on July 21, 2003, as an employee at will, for the position of Sales Manager.

15. During and after the course of her employment at Vanlines, Lulka performed her job unsatisfactorily, breached her employment agreement, and made libelous accusations against Asher.

16. Due to the conduct set forth above, Lulka's employment with Vanlines was terminated on April 29, 2005.

17. Some time after the termination of her employment at Vanlines, Lulka organized a New York corporation, defendant Net-Marketing, to, upon information and belief, compete directly with both Vanlines and National Mortgage.

18. Net-Marketing operates two affiliated websites, www.quotesathome.com (the "Lulka Website") and www.therightlender.com (the "Lulka Mortgage Website"). Both the Lulka Website and the Lulka Mortgage Website are knock-offs of the Vanlines Website and the National Mortgage Website, respectively. They are both organized in essentially the same manner, they have the same 'look-and-feel', and materials from the Vanlines Website and the National Mortgage Website are copied from, and reproduced wholesale, on the Lulka Website and the Lulka Mortgage Website.

19. Upon information and belief, Lulka made use of her position at Vanlines to usurp, steal or otherwise claim as her own, or Net-Marketing's own, Vanlines and National Mortgage proprietary information, including but not limited to trade secrets, and

4

intellectual property belonging to Vanlines and National Mortgage, including but not limited to copyrighted material on the Vanlines Website and the National Mortgage Website.

## AS AND FOR THE FIRST CAUSE OF ACTION
(Against Net-Marketing and Lulka for Copyright Infringement)

20.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 19 of this complaint with the same force and effect as if set forth fully at length herein.

21.     Beginning in or around 2000, Vanlines created and published the Vanlines Website, which contained information about, and various links to, service providers within the moving and relocation industry. The Vanlines Website was published on the internet with copyright notices in the name of Vanlines.  In further compliance with the copyright laws of the United States, the Vanlines Website and materials thereon are duly registered for copyright in the United States Copyright Office in the name of Vanlines under Registration No. TX 6-265-603. A copy of the Registration Certificate issued by the United States Copyright Office for the Vanlines Website is attached hereto as **Exhibit "A"**.

22.     Vanlines has always been the sole owner and proprietor of all right, title and interest in the copyright in the Vanlines Website. The copyright in the Vanlines Website is presently valid and subsisting and was valid and subsisting at all times affecting the matters complained of herein.

23.     Upon information and belief, commencing sometime during 2005 and continuing up to the present time, Defendants have continually infringed upon

5

copyrighted materials appearing on the Vanlines Website through the publication of such copyrighted text, contents, display and other materials on the Lulka Website. Defendants have made such publication without any authorization or license from Vanlines, instead passing off the materials appearing on the Lulka Website as their own. Defendants have also committed copyright infringement by copying the total concept and feel of the Vanlines Website.

24.     More specifically, there are at least nineteen (19) text-intensive documents on the Lulka Website, copying and/or misappropriating text, contents, display and other materials from the Vanlines Website.

25.     At this time, Plaintiffs are not aware of other infringing acts of Defendants, which may come to light at a future date.

26.     Defendants have willfully infringed, for profit, Vanlines copyrighted text, contents, display and other materials by passing off such copyrighted text, contents, display, total concept and feel, and other materials as their own on the Lulka Website, well knowing that such materials were copied from, and were more than substantially similar to, copyrighted text, contents, display, total concept and feel and other materials appearing on the Vanlines Website, in which Vanlines had had an existing copyright.

27.     Defendants acted maliciously and willfully, entitling Vanlines to punitive damages.

28.     It is difficult at this time to ascertain the exact amount of damages suffered by Vanlines by the infringement of the copyright material on the Vanlines Website and it is likewise difficult for Vanlines to ascertain at this time the profits which Defendants have made or realized by reason of the infringements. In accordance with 17 U.S.C. §

504, Vanlines will advise the Court in due course in this proceeding and before final judgment as to whether it elects to recover actual damages and profits or the statutory damages provided by the Copyright Act. Vanlines nonetheless demands an accounting by Lulka and Net-Marketing of their activities in connection with their infringement of the copyright in text, contents, display and other materials appearing on the Vanlines Website, and Defendants' gross income and profits derived therefrom.

29.     By reason of the foregoing, Vanlines is entitled to judgment (a) in an amount to be determined at trial as per Vanlines' selection of statutory or actual damages, plus punitive damages in an amount to be determined at trial but not less than $500,000, together with statutory interest and costs and disbursements of this action; (b) directing that Defendants be preliminarily and permanently enjoined from further infringing upon Vanlines' copyright; and (c) an accounting by Lulka and Net-Marketing of their activities in connection with their infringements of the copyright in text, contents, display and other materials appearing on the Vanlines Website, and Defendants' gross income and profits derived therefrom.

## AS AND FOR THE SECOND CAUSE OF ACTION
(Against Net-Marketing and Lulka for Trade Dress Infringement)

30.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 29 of this complaint with the same force and effect as if set forth fully at length herein.

31.     The design, layout, background, framework, and format of the Vanlines Website have combined to form an inherently distinctive and non-functional trade dress.

32.     Defendants have infringed upon the trade dress of the Vanlines Website by misappropriating the design, layout, background, framework and format of the Vanlines Website and presenting it as Defendants' own on the Lulka Website.

33.     Defendants' willful and knowing infringement of the Vanlines Website's trade dress has caused, or is likely to cause, confusion, mistake or deceit as to the affiliation, connection, or association of the Lulka Website with the Vanlines Website. Additionally, such duplication has caused, or is likely to cause, confusion, mistake and/or deceit as to the origin, sponsorship, and/or Vanlines' approval of Defendants' goods, services, and/or commercial activities.

34.     Defendant's conduct is causing immediate and irreparable injury to Vanlines and will continue to both damage Vanlines and deceive the public until enjoined by this Court.

35.     Defendants have received substantial revenues and profits arising out of the aforesaid conduct, and Vanlines has also suffered damages as a result of Defendant's aforesaid conduct in an amount to be determined at trial, but no less than $1,000,000.

36.     Defendants acted maliciously and willfully, entitling Vanlines to punitive damages.

37.     By reason of the foregoing, Vanlines is entitled to judgment (a) in an amount to be determined at trial but not less than $1,000,000, plus punitive damages in an amount to be determined at trial but not less than $500,000, together with statutory interest and costs and disbursements of this action;  (b) directing that Defendants be preliminarily and permanently enjoined from further infringing upon the trade dress of the Vanlines' Website; and (c) an accounting by Lulka and Net-Marketing of their activities in

connection with their infringements of the trade dress of the Vanlines Website, and Defendants' gross income and profits derived therefrom.

## AS AND FOR THE THIRD CAUSE OF ACTION
(Against Lulka and Net-Marketing for Misappropriation of Vanlines Trade Secrets)

38.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 37 of this complaint with the same force and effect as if set forth fully at length herein.

39.     As described hereinabove, Vanlines is in the business of, among other, providing information relating to moving and relocating services, specifically in the online realm.

40.     Over the years, Vanlines has developed a unique methodology to develop a wealth of information with respect to the areas of moving and relocation, both in the United States and worldwide. As a result of its activities, Vanlines has built up a unique and valuable database, and has acquired and developed additional proprietary information, all in the highly competitive industry of moving and relocation.

41.     As a result of many years of substantial effort and the expenditures of large sums of money in the creation and development of proprietary information and the aforementioned database, Vanlines has attained a reputable position of eminence and importance in the moving and relocation industry.

42.     The proprietary information (the "Vanlines Trade Secrets") that Vanlines has developed over the years includes, without limitation, a database, contact information of vendors, promotional materials, market research, website design, website performance monitoring, surveys, future business plans, and other such information.

43.     The Vanlines Trade Secrets are not available to, and actively kept protected from, persons outside Vanlines' employ.

44.     Vanlines has taken numerous measures to preserve the secrecy of the Vanlines Trade Secrets, such as installing secret security codes in all computers with access to the database, and posting security notices. Accordingly, the Vanlines Trade Secrets are not accessible to outsiders and constitute confidential, proprietary information and trade secrets.

45.     As detailed within, Lulka was hired as a Sales Manager by Vanlines on July 21, 2003, and her employment was terminated on April 29, 2005.

46.     As a Vanlines employee, Lulka was aware of Vanlines' policies prohibiting disclosure or other use of any of the Vanlines Trade Secrets upon her termination or resignation from Vanlines.

47.     As Sales Manager, Lulka had access to and used Vanlines Trade Secrets.

48.     Upon information and belief, during the course of her employment at Vanlines, Lulka wrongfully and surreptitiously accumulated, collected, and copied the Vanlines Trade Secrets in a manner unknown to Plaintiffs at this time. Upon her termination from Vanlines, Lulka formed her own company, Net-Marketing, which immediately engaged in the identical business as Vanlines.

49.     Upon information and belief, in breach of applicable duties as a former employee and in breach of her employment agreement, Lulka and Net-Marketing have used and are currently using the Vanlines Trade Secrets. Net-Marketing had all but admitted such misappropriation in a holiday card delivered to Asher during the winter of 2005, bearing the Lulka Website pre-printed greetings and additional handwritten text

stating, inter alia, "To Sharon. Happy Holiday's [sic]. Thank you for giving us [Lulka, Net-Marketing, and Michael Laville, who, upon information and belief, is the Director of Business Development at Net-Marketing] the greatest gift of <u>ALL</u>!!  Mike".  This is a clear reference to the Vanlines Trade Secrets which are being misappropriated by Defendants.

50.     Vanlines has been damaged and injured in its business by Defendants' misappropriation of the Vanlines Trade Secrets in an amount to be determined at trial, but no less than $1,000,000.  Furthermore, Vanlines continues to be irreparably harmed in its business by Defendants' continuing misappropriation of the Vanlines Trade Secrets.

51.     Defendants have acted maliciously and willfully, entitling Vanlines to punitive damages.

52.     By reason of the foregoing, Vanlines is entitled to judgment (a) in an amount to be determined at trial, but not less than $1,000,000, plus punitive damages in an amount to be determined at trial but not less than $500,000, together with statutory interest and costs and disbursements of this action; and (b) directing that Defendants be preliminarily and permanently enjoined from making such further improper use of the Vanlines Trade Secrets.

## AS AND FOR THE FOURTH CAUSE OF ACTION
(Against Lulka and Net-Marketing for Misappropriation of
National Mortgage Trade Secrets)

53.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 52 of this complaint with the same force and effect as if set forth fully at length herein.

54.    As detailed hereinabove, National Mortgage is in the business of providing online information and resources relating to mortgage loans.

55.    Over the years, National Mortgage has developed a unique methodology to develop a wealth of information with respect to the areas of mortgage loans and mortgage service providers.  As a result of its activities, National Mortgage has built up a unique and valuable database, and has acquired and developed additional proprietary information in the competitive industry of mortgage services.

56.    As a result of substantial effort and the expenditures of large sums of money in the creation and development of proprietary information and the aforementioned database, National Mortgage has attained a position of eminence and importance in the mortgage industry.

57.    The proprietary information (the "National Mortgage Trade Secrets") that National Mortgage has developed over the years includes a database, contact information of vendors, promotional materials, market research, future business plans, and other such information

58.    The National Mortgage Trade Secrets are not available to, and are kept protected from, persons outside National Mortgage's and Vanlines' employ.

59.    National Mortgage has taken numerous measures to preserve the secrecy of the National Mortgage Trade Secrets, such as protecting its computers having access to the database and posting security notices.  Accordingly, the National Mortgage Trade Secrets are not accessible to outsiders and constitutes confidential, proprietary information and trade secrets.

60.    As Sales Manager, Lulka had access to, and used, not only the Vanlines Trade Secrets but also the National Mortgage Trade Secrets.

61.    Upon information and belief, while employed by Vanlines, Lulka wrongfully and surreptitiously accumulated, collected, and copied the National Mortgage Trade Secrets through methods unknown to plaintiffs at this time. Upon the termination of her employment at Vanlines, Lulka formed her own company, Net-Marketing, which, as far as mortgage services, engages in the identical business as National Mortgage.

62.    Upon information and belief, in breach of her duties and in breach of her employment agreement, Lulka and Net-Marketing have used and are currently using the National Mortgage Trade Secrets.    Net-Marketing had all but admitted such misappropriation in a holiday card delivered to Asher during the winter of 2005, bearing the Lulka Website pre-printed greetings and additional handwritten text stating, inter alia, "To Sharon. Happy Holiday's [sic]. Thank you for giving us [Lulka, Net-Marketing, and Michael Laville, who, upon information and belief, is the Director of Business Development at Net-Marketing] the greatest gift of ALL!! Mike". This is a clear reference to the National Mortgage Trade Secrets which are being misappropriated by Defendants.

63.    National Mortgage has been damaged and injured in its business by Defendants' misappropriation of the National Mortgage Trade Secrets in an amount to be determined at trial, but no less than $1,000,000. Furthermore, National Mortgage continues to be irreparably harmed in its business by Defendants' continuing and current misappropriation of the National Mortgage Trade Secrets.

64.    Defendants acted maliciously and willfully, entitling National Mortgage to punitive damages.

65.    By reason of the foregoing, National Mortgage is entitled to judgment (a) in an amount to be determined at trial, but not less than $1,000,000, plus punitive damages in an amount to be determined at trial but not less than $500,000, together with statutory interest and costs and disbursements of this action; and (b) directing that Defendants be preliminarily and permanently enjoined from making such further improper use of the National Mortgage Trade Secrets.

## AS AND FOR THE FIFTH CAUSE OF ACTION
(Against Net-Marketing and Lulka for Violations of
New York General Business Law Section 349)

66.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 65 of this complaint with the same force and effect as if set forth fully at length herein.

67.    Defendants' acts of which Plaintiffs complain herein constitute deceptive acts and practices in the conduct of business, trade, or commerce, or in the furnishing of services, in the state of New York.

68.    Plaintiffs have been injured by reason of such deceptive acts or practices.

69.    Defendants aforesaid violations of NY GBL § 349 have caused Plaintiffs to sustain monetary damage, loss, and injury, in an amount to be determined at trial, but not less than $1,000,000 each.

70.     Upon information and belief, Defendants have engaged in this activity knowingly and willfully, justifying assessment of punitive damages in an amount to be determined at trial.

71.     Defendants' aforesaid violations of NY GBL § 349, unless enjoined by this Court, will cause Plaintiffs to continue sustaining damages.

72.     By reason of the foregoing, Plaintiffs are entitled to judgment (a) in an amount to be determined at trial, but not less than $1,000,000 each, plus punitive damages in an amount to be determined at trial but not less than $500,000 each, together with statutory interest and costs and disbursements of this action; and (b) directing that Defendants be preliminarily and permanently enjoined from further wrongful acts and practices in the conduct of business, trade, or commerce, or in the furnishing of services, in the state of New York, relating to Plaintiffs' businesses.

## AS AND FOR THE SIXTH CAUSE OF ACTION
(Against Lulka for Breaches of Fiduciary Duties)

73.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 72 of this complaint with the same force and effect as if set forth fully at length herein.

74.     Lulka's duties and responsibilities during the course of her employment with Vanlines included, among other, contacting existing and potential vendors, and representing Vanlines in the initiating and negotiating of contracts and business arrangements with individuals and business entities.

75.     By virtue of Lulka's employment with Vanlines, Vanlines was entitled to place reliance and trust upon the integrity, competence, honesty, and fidelity of Lulka in respect to her duties which she owed Vanlines

76.     Furthermore, by virtue of her employment with Vanlines, Lulka undertook the fiduciary duty of loyalty, which includes the duty of non-disclosure.

77.     Lulka violated the trust placed in her and the fiduciary duties she owed to Vanlines by disclosing, and otherwise misusing and misappropriating, Vanlines Trade Secrets and the National Mortgage Trade Secrets, by disparaging Vanlines and National Mortgage and their personnel, and by making improper use of her time while employed by Vanlines to plan a competing venture.

78.     As a result of Lulka's breach of fiduciary duties, National Mortgage and Vanlines have each been damaged in an amount to be determined at trial, but not less than $1,000,000 each.

79.     Lulka acted maliciously and willfully, entitling Vanlines and National Mortgage to punitive damages.

80.     By reason of the foregoing, Vanlines and National Mortgage are each entitled to judgment in an amount to be determined at trial, but not less than $1,000,000 each, plus punitive damages in an amount to be determined at trial but not less than $500,000 each, together with statutory interest and costs and disbursements of this action.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
(Against Lulka for Breach of Contract)

81.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 80 of this complaint with the same force and effect as if set forth fully at length herein.

82.    In or about June of 2003, Lulka and Asher began communicating and corresponding about an employment opportunity for Lulka at Vanlines.

83.    As a result of such communications and negotiations, Asher offered Lulka a position as Sales Manager at Vanlines. Lulka accepted this offer and began working at Vanlines on July 21, 2003.

84.    In consideration of Lulka performing employment services for Vanlines and as part of the contractual agreement between the parties, Vanlines regularly paid Lulka a salary.

85.    By virtue of her employment agreement with Vanlines, Lulka was bound by, among other, contractual obligations of non-competition, non-disclosure, and other obligations. Lulka was also bound by a comprehensive Confidentiality Agreement and a Mutual Non-Disclosure Agreement.

86.    Sometime after commencing her employment with Vanlines, Lulka breached her contractual obligations by disclosing confidential information belonging to Vanlines and National Mortgage, including, but not limited to, the Vanlines Trade Secrets and the National Mortgage Trade Secrets.

87.    Lulka also violated the employment agreement by using Vanlines' time and resources to develop a competing venture. Furthermore, Lulka did not perform her

17

duties in accordance with the minimal guidelines set forth by the employment agreement by, *inter alia*, repeatedly using substantial company time and resources to send and receive electronic messages of a purely personal nature.

88.     Furthermore, after her termination for cause from her employ at Vanlines, Lulka breached her implied and express obligations under the agreement with Vanlines by disclosing Vanlines Trade Secrets and National Mortgage Trade Secrets to Net-Marketing, an entity formed by her to compete with Vanlines and National Mortgage, and by operating Net-Marketing in direct competition with Vanlines and National Mortgage.

89.     Lulka's unlawful breach of the agreement with Vanlines has caused Vanlines to suffer damages of at least $1,000,000.

90.     By reason of the foregoing, Vanlines is entitled to judgment against Lulka in an amount to be determined at trial, but not less than $1,000,000.

## AS AND FOR THE EIGHTH CAUSE OF ACTION
(Against Lulka for Libel)

91.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 90 of this complaint with the same force and effect as if set forth fully at length herein.

92.     At least on three separate occasions, namely, on July 9, 2004, July 30, 2004, and August 16, 2004, all of which are within the time during which Lulka was employed by Vanlines, Lulka published and circulated electronic mail communications ("Emails") containing libelous statements about Asher.

93.     On July 9, 2004, Lulka published and circulated an electronic mail communication stating "He [Asher] intentionally alienates his employees and distances himself from us, and then he [Asher] freaks out because one day he [Asher] realizes that he [Asher] doesn't have a clue about what's going on or what anyone is doing. Then he [Asher] has a meeting where he interrogates people."

94.     On July 30, 2004, Lulka published and circulated an electronic mail communication stating "I'm pissed about this. because Sharon [Asher] is sending a message to his [Asher's] employees that he [Asher] just doesn't care about us or what we think. it's like paying us for the work we do is not a priority for him [Asher]. he [Asher] just assumes that it's not a big deal. meanwhile, he [Asher] can write himself a check or take money whenever he [Asher] pleases."

95.     On August 16, 2004, Lulka published and circulated an electronic mail communication stating "that is completely dishonest. he [Asher] absolutely told me that we would continue your bonus. i will confront him [Asher] about this the next time we meet. whenever that may be...i've been blown off and I get the feeling he [Asher] knows that he is being unfair but when it comes down to it, if it means an extra dollar in his [Asher's] pocket he [Asher] doens't [sic] care."

96.     Upon information and belief, at the time of the aforesaid publications of the Emails, Lulka was motivated by and acted in actual malice in that Lulka knew that the accusations, assertions and matters contained in the Emails, concerning the respective Plaintiffs, were false and untrue, or were published with reckless and wanton disregard of whether they were false and untrue.

97.    As a result of the publications of the Emails and the acts of Lulka in connection therewith, the Plaintiffs were, each, held up to public contempt, ridicule, disgrace, and prejudice; have suffered great mental pain and anguish; and have been irreparably injured in their good names, business reputation, and social standing, and have lost the esteem and respect of their friends, acquaintances, business associates, and of the public generally.

98.    Lulka acted maliciously and willfully, entitling Plaintiffs to punitive damages.

99.    By reason of the foregoing, Plaintiffs have each suffered damages in an amount to be determined at trial, but not less than $1,000,000 each, plus punitive damages in an amount to be determined at trial but not less than $500,000 each, together with statutory interest and costs and disbursements of this action.

## AS AND FOR THE NINTH CAUSE OF ACTION
(Against Lulka for Copyright Infringement, Trade Dress Infringement, Misappropriation of Trade Secret and Violations of New York General Business Law Section 349, Based on Piercing of the Veil)

100.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 99 of this complaint with the same force and effect as if set forth fully at length herein.

101.    Upon information and belief, at all relevant times Lulka was fully aware that Net-Marketing's infringing action as set forth hereinabove violated Vanlines' copyright and the trade dress rights inherent in the Vanlines Website.

102.    Lulka had the power and authority to halt Net-Marketing's infringing actions, but instead intentionally, deliberately, fraudulently and wrongfully failed to do so.

20

As a result thereof, Lulka has knowingly, intentionally, deliberately, fraudulently and wrongfully committed copyright infringement and trade dress infringement for her own personal gain.

103.    Similarly, Lulka has utilized her position of domination within Net-Marketing to knowingly, intentionally, deliberately, fraudulently and wrongfully to cause Net-Marketing to misappropriate the Vanlines Trade Secrets and the National Mortgage Trade Secrets, and make use of them within Net-Marketing, causing harm to Plaintiffs.

104.    Lulka also utilized her position within Net-Marketing to knowingly, intentionally, deliberately, fraudulently and wrongfully to cause Net-Marketing to take deceptive actions and practices in the conduct of business, trade, or commerce, or in the furnishing of services, in the state of New York, in violation of NY GBL § 349, causing harm to Plaintiffs.

105.    By virtue of Lulka's wrongful conduct related to Net-Marketing's copyright infringement, Net Marketing's trade dress infringement, Net Marketing's misappropriation of trade secrets, and Net-Marketing's violations NY GBL § 349, as well as Lulka's complete domination of Net-Marketing, the veil of the corporate form should be disregarded and pierced, and Lulka should be held directly liable for the conduct of Net-Marketing.

106.    By virtue of Lulka's copyright infringement, Vanlines is entitled to judgment against Lulka (a) in an amount to be determined at trial as per Vanlines' selection of statutory or actual damages, plus punitive damages in an amount to be determined at trial but not less than $500,000, together with statutory interest and costs and disbursements of this action; (b) directing that Lulka and Net-Marketing be

preliminarily and permanently enjoined from further infringing upon Vanlines' copyright; and (c) an accounting by Lulka and Net-Marketing of their activities in connection with their infringements of the copyright in text, contents, display and other materials appearing on the Vanlines Website, and Defendants' gross income and profits derived therefrom.

107.    By virtue of Lulka's trade dress infringement, Vanlines is entitled to judgment against Lulka (a) in an amount to be determined at trial but not less than $1,000,000, plus punitive damages in an amount to be determined at trial but not less than $500,000, together with statutory interest and costs and disbursements of this action; (b) directing that Defendants be preliminarily and permanently enjoined from further infringing upon the trade dress of the Vanlines' Website; and (c) an accounting by Lulka and Net-Marketing of their activities in connection with their infringements of the trade dress of the Vanlines Website, and Defendants' gross income and profits derived therefrom.

108.    By virtue of Lulka's misappropriation of trade secrets, Vanlines and National Mortgage are entitled to judgment against Lulka (a) in an amount to be determined at trial, but not less than $1,000,000 each, plus punitive damages in an amount to be determined at trial but not less than $500,000 each, together with statutory interest and costs and disbursements of this action; and (b) directing that Lulka and Net-Marketing be preliminarily and permanently enjoined from making such further improper use of the Vanlines Trade Secrets and the National Mortgage Trade Secrets.

109.    By virtue of Lulka's violations of NY GBL § 349, Plaintiffs are entitled to judgment against Lulka (a) in an amount to be determined at trial, but not less than

$1,000,000 each, plus punitive damages in an amount to be determined at trial but not less than $500,000 each, together with statutory interest and costs and disbursements of this action; and (b) directing that Lulka and Net-Marketing be preliminarily and permanently enjoined from further wrongful acts and practices in the conduct of business, trade, or commerce, or in the furnishing of services, in the state of New York, relating to Plaintiffs' businesses.

## AS AND FOR THE TENTH CAUSE OF ACTION
(Against Net-Marketing and Lulka for an Accounting)

110.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 109 of this complaint with the same force and effect as if set forth fully at length herein.

111.   By virtue of Defendant's infringing acts relating to Vanlines' valid copyright, and due to Lulka's wrongful misappropriation of the Vanlines Trade Secrets and the National Mortgage Trade Secrets, Vanlines and National Mortgage seek, and are entitled to, an accounting by Lulka and Net-Marketing of their activities in connection with their infringement of the copyright in text, contents, display and other materials appearing on the Vanlines Website, Defendants' gross income and profits derived therefrom, Lulka's misappropriation of the Vanlines Trade Secrets and the National Mortgage Trade Secrets, and Defendants' gross income and profits derived therefrom.

## AS AND FOR THE ELEVENTH CAUSE OF ACTION
(Against Net-Marketing and Lulka for Disgorgement of Profits)

112.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 111 of this complaint with the same force and effect as if set forth fully at length herein.

113.   By virtue of Lulka's breach of loyalty owed to Vanlines, Lulka's breach of contract, Defendants' violation of New York statutory law, and Defendants' other wrongful actions in this action, Plaintiffs seek, and are entitled to, a disgorgement of profits accumulated by Lulka and Net-Marketing in connection with their aforesaid actions.

WHEREFORE, Plaintiffs seek judgment, as follows:

    a.   On the First Cause of Action, against Lulka and Net-Marketing, (a) in an amount to be determined at trial as per Vanlines' selection of damages, plus punitive damages in an amount to be determined at trial but not less than $500,000, together with statutory interest and costs and disbursements of this action; (b) directing that Defendants be preliminarily and permanently enjoined from further infringing on Vanlines' copyright; and (c) an accounting by Lulka and Net-Marketing of their activities in connection with their infringement of the copyright in text, contents, display and other material appearing on the Vanlines Website, and its gross income and profits derived therefrom..

b.      On the Second Cause of Action, against Lulka and Net-Marketing, (a) in an amount to be determined at trial but not less than $1,000,000, plus punitive damages in an amount to be determined at trial but not less than $500,000, together with statutory interest and costs and disbursements of this action;   (b) directing that Defendants be preliminarily and permanently enjoined from further infringing upon the trade dress of the Vanlines' Website; and (c) an accounting by Lulka and Net-Marketing of their activities in connection with their infringements of the trade dress of the Vanlines Website, and Defendants' gross income and profits derived therefrom.

c.      On the Third Cause of Action, against Lulka, (a) in an amount to be determined at trial, but not less than $1,000,000, plus punitive damages in an amount to be determined at trial but not less than $500,000, together with statutory interest and costs and disbursements of this action; and (b) directing that Defendants be immediately and permanently enjoined from making such further improper use of the Vanlines Trade Secrets.

d.      On the Fourth Cause of Action, against Lulka, (a) in an amount to be determined at trial, but not less than $1,000,000, plus punitive damages in an amount to be determined at trial but not less than $500,000, together with statutory interest and costs and disbursements of this action; and (b) directing that Defendants be

preliminarily and permanently enjoined from making such further improper use of the National Mortgage Trade Secrets.

e.   On the Fifth Cause of Action, against Lulka and Net-Marketing, (a) in an amount to be determined at trial, but not less than $1,000,000 each, plus punitive damages in an amount to be determined at trial but not less than $500,000 each, together with statutory interest and costs and disbursements of this action; and (b) directing that Defendants be preliminarily and permanently enjoined from further wrongful acts and practices in the conduct of business, trade, or commerce, or in the furnishing of services, in the state of New York, relating to Plaintiffs' businesses.

f.   On the Sixth Cause of Action, against Lulka and in favor of Vanlines and National Mortgage, in an amount to be determined at trial, but not less than $1,000,000 each, plus punitive damages in an amount to be determined at trial but not less than $500,000 each, together with statutory interest and costs and disbursements of this action.

g.   On the Seventh Cause of Action, against Lulka in an amount to be determined at trial, but not less than $1,000,000.

h.   On the Eighth Cause of Action, against Lulka and in favor of Asher in an amount to be determined at trial, but not less than $1,000,000 each, plus punitive damages in an amount to be

determined at trial but not less than $500,000, together with statutory interest and costs and disbursements of this action.

i.    On the Ninth Cause of Action,

    i.    against Lulka (a) in an amount to be determined at trial as per Vanlines' selection of statutory or actual damages, plus punitive damages in an amount to be determined at trial but not less than $500,000, together with statutory interest and costs and disbursements of this action; (b) directing that Lulka and Net-Marketing be preliminarily and permanently enjoined from further infringing upon Vanlines' copyright; and (c) an accounting by Lulka and Net-Marketing of their activities in connection with their infringements of the copyright in text, contents, display and other materials appearing on the Vanlines Website, and Defendants' gross income and profits derived therefrom;

    ii.    against Lulka (a) in an amount to be determined at trial but not less than $1,000,000, plus punitive damages in an amount to be determined at trial but not less than $500,000, together with statutory interest and costs and disbursements of this action; (b) directing that Defendants be preliminarily and permanently enjoined from further infringing upon the trade dress of the Vanlines' Website; and (c) an accounting by Lulka and Net-Marketing of their activities in connection with their

infringements of the trade dress of the Vanlines Website, and Defendants' gross income and profits derived therefrom;

iii. against Lulka (a) in an amount to be determined at trial, but not less than $1,000,000 each, plus punitive damages in an amount to be determined at trial but not less than $500,000 each, together with statutory interest and costs and disbursements of this action; and (b) directing that Lulka and Net-Marketing be preliminarily and permanently enjoined from making such further improper use of the Vanlines Trade Secrets and the National Mortgage Trade Secrets; and

iv. against Lulka (a) in an amount to be determined at trial, but not less than $1,000,000 each, plus punitive damages in an amount to be determined at trial but not less than $500,000 each, together with statutory interest and costs and disbursements of this action; and (b) directing that Lulka and Net-Marketing be preliminarily and permanently enjoined from further wrongful acts and practices in the conduct of business, trade, or commerce, or in the furnishing of services, in the state of New York, relating to Plaintiffs' businesses.

j.    On the Tenth Cause of Action, an accounting by Lulka and Net-Marketing of their activities in connection with their infringement of the copyright in text, contents, display and other material appearing on the Vanlines Website, Defendants' gross income and

profits derived therefrom, Lulka's misappropriation of the Vanlines Trade Secrets and the National Mortgage Trade Secrets, and Defendants' gross income and profits derived therefrom.

k.    On the Eleventh Cause of Action, against Lulka and Net-Marketing, for a disgorgement of profits accumulated as a result of their wrongful actions.

l.    For such other and further relief that this Court deems just and proper.

Dated: New York, New York
       July 13, 2006

SHIBOLETH, YISRAELI, ROBERTS & ZISMAN, L.L.P.

By: _____

      Oren Heiman, Esq. (OH-6448)
Attorneys for Plaintiffs
350 Fifth Avenue, Suite 6001
New York, NY 10118
(212) 244-4111

# Exhibit "A"

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America



**C Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REGIS

**TX 6–265–603**

EFFECTIVE DATE OF REGISTRATION

Month **JUN** Day **05** Year **06**

RATE CONTINUATION SHEET.

---

## 1

**TITLE OF THIS WORK ▼**
WWW.VANLINES.COM

**PREVIOUS OR ALTERNATIVE TITLES ▼**
N/A

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.        Title of Collective Work ▼
N/A

If published in a periodical or serial give: Volume ▼ N/A    Number ▼ N/A    Issue Date ▼ N/A    On Pages ▼ N/A

---

## 2

**a**  **NAME OF AUTHOR ▼**
VANLINES.COM LLC

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ United States
   { Domiciled in▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Entire text

**b**  **NAME OF AUTHOR ▼**
N/A

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
   { Domiciled in▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
N/A

**c**  **NAME OF AUTHOR ▼**
N/A

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
   { Domiciled in▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
N/A

---

## 3

**a**  **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED**  This information must be given ONLY if this work has been published. ◀Year **1999 2004**

**b**  **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**  Complete this information ONLY if this work has been published.  Month▶ September JUNE Day▶ 30 01 Year▶ 1999 2004 ◀Nation United States

---

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2.▼
Vanlines.com LLC
80 Broad Street, Suite 1303
New York, NY 10004

See instructions before completing this space.

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
N/A

APPLICATION RECEIVED
JAN 05 2006
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
JAN 05 2006

FUNDS RECEIVED

DO NOT WRITE HERE OFFICE USE ONLY

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.        • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

*Amended by C.O. from phone call to Sam S. Rosen of Heiman Law Group, P.C. on February 2, 2006.

CHECKED BY

☐ CORRESPONDENCE
Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number ▶** N/A       **Year of Registration ▶** N/A

**5**

**DERIVATIVE WORK OR COMPILATION**

Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

Previously published edition *

N/A –

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

N/A Revised text  *

**a**

**b**

**6**

See instructions
before completing
this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼                                                    Account Number ▼

N/A                                                       N/A

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼

Vanlines.com LLC C/O Heiman Law Group, P.C.
350 5th Avenue, Suite 6007
New York, NY 10118-6007

Area code and daytime telephone number ▶ (212) 643-2929       Fax number ▶ (212) 643-8445

Email ▶   manager@heimanlaw.com

**a**

**b**

**7**

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of   Vanlines.com LLC

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Sharon Asher, President                            Date ▶ November 23, 2005

Handwritten signature (X) ▼

x Sharon Asher

**8**

**Certificate will be mailed in window envelope to this address:**

Name ▼
Vanlines.com LLC C/O Heiman Law Group, P.C.

Number/Street/Apt ▼
350 5th Avenue, Suite 6007

City/State/ZIP ▼
New York, NY 10118-6007

• Complete all necessary spaces
• Sign your application in space 8

1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

Library of Congress
Copyright Office - TX
101 Independence Avenue, S.E.
Washington, D.C. 20559-6222

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.